UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARIE A. OLSEN,

                           Plaintiff,                    **<u>Memorandum and Order</u>**

      -against-                           04-CV-3648 (JMA)

K MART CORPORATION,

                           Defendant.

-------------------------------------------------------------X

APPEARANCES:

JOHN J. TRACY, ESQ.
TRACY & STILWELL, P.C.
1688 VICTORY BOULEVARD
STATEN ISLAND, NY 10314

MICHAEL D. KERN
SIMMONS, JANNACE & STAGG, LLP
75 JACKSON AVENUE
SYOSSET, NY 11791

**AZRACK, United States Magistrate Judge**:

      This action, brought by plaintiffs Marie A. Olsen and Warren Olsen in New York State

Supreme Court, was removed to this Court based on diversity jurisdiction, pursuant to 28 U.S.C.

§1441(a) (Dkt No. 1: 08/24/04 Notice of Removal).  By stipulation dated February 28, 2005, the

action by plaintiff Warren Olsen was discontinued against defendant (Dkt No. 6: 02/28/05

Stipulation of Discontinuance).  By stipulation dated May 18, 2005, the parties consented to have

this case presided over by me for all purposes, including entry of judgment (Dkt No. 9: 05/18/05

Consent to Jurisdiction by U.S. Mag. J.).  Accordingly, I have considered defendant K Mart

Corporation's motion for summary judgment, in which defendant argues that plaintiff Marie Olsen

has not made out a case of <u>prima</u> <u>facie</u> negligence.  Defendant argues that plaintiff failed to

sufficiently prove that defendant either created the condition which caused her injury or had actual or constructive notice of the condition and, additionally, that summary judgment should be granted because the condition was open and obvious, not inherently dangerous, and readily observable. For the reasons stated below, defendant's motion is denied.

## BACKGROUND

For the purposes of this motion, the facts are drawn from the parties' Local Rule 56.1 Statements ("56.1 St."), Marie Olsen's March 3, 2005 deposition ("Olsen Dep.") (Dkt No. 17: 08/30/05 Notice of Mot. for Summ. J., Ex. G), John Ravaioli's March 3, 2005 deposition ("Ravaioli Dep.") (Id., Ex. H), Anthony Davidson's April 26, 2005 deposition ("Davidson Dep.") (Id., Ex. I), and photographs of the K Mart aisle where the incident occurred (Id., Ex. E; Dkt No. 16: 08/25/05 Pl.'s Affirm. in Opp. Ex.1-8).

On October 20, 2003 plaintiff, accompanied by her husband, visited the K Mart located at 2875 Richmond Avenue (Def.'s 56.1 St., ¶ 1). After approximately a half-hour of shopping for sundry items, plaintiff entered the canned goods aisle (Id., ¶ 3). Upon entering at the end of the canned goods aisle, plaintiff observed floor displays along the eighty-foot long aisle and two women at the opposite end (Olsen Dep. 25:10, 26:4-5,16-20, 27:9-10). Plaintiff proceeded down the middle of the aisle, pushing a shopping cart and looking at the shelves of goods (Olsen Dep. 27:24-25, 28:6-7). Approximately forty-feet into the aisle, plaintiff stopped her cart and moved approximately two feet over to the shelves, where she reached up to retrieve three cans (Olsen Dep. 31:18, 32:16-19, 33:10-13,24-25). Cradling the three cans between her left forearm and her body, plaintiff attempted to return to her shopping cart (Olsen Dep. 34:17-22, 35:5-7). Trying to move her feet, plaintiff "hit [a] box and went right over it." (Olsen Dep. 35:22-23). Still holding the cans, plaintiff hit the

ground on her left shoulder and arm (Olsen Dep. 70:8-11,18-20).  The box over which plaintiff tripped and fell was a wrapped, cardboard case full of Spaghetti-O's cans (Olsen Dep. 37:7-10, 38:20-22).  It was the only such case on the floor (Olsen Dep. 38:18-19).

After plaintiff's fall, a K Mart manager, John Ravaioli, came to assist her (Olsen Dep. 77:18-21; Ravaioli Dep. 11:22-24, 18:10-14).  Ravaioli moved the flat of cans off the floor (Ravaioli Dep. 52:5-6).  Plaintiff observed him pick up the case of Spaghetti-O's and place it on a lower shelf on top of boxes of noodles (Olsen Dep. 43:19-25, 44:2-12, 79:15-17; Affirm. in Opp'n to K Mart's Mot. for Summ. J., Ex. 4; Notice of Mot. for Summ. J., Ex. E, photo. E & Q).  When plaintiff returned to the K Mart location three days later to photograph the aisle where she had fallen, she observed the flat in the same location, on top of the boxes of noodles.  (Olsen Dep. 43:19-25, 44:2-12, 63:11-19, 69: 3-6; Notice of Mot. for Summ. J., Ex. E, photo. Q).  Plaintiff photographed the aisle in which she fell, the shelf on which the case of Spaghetti-O's had been placed, and the fully stocked Spaghetti-O's shelf.  (Olsen Dep. 40:18-25, 42:22-25, 49:6-25, 50:20-25; Notice of Mot. for Summ. J., Ex. E, photo. A - Q).

Plaintiff's left shoulder was broken as a result of her fall (Olsen Dep. 87:4-5).  Plaintiff has had rheumatoid arthritis throughout her entire body and diabetes for many years (Olsen Dep. 9:15-25; 13:18-20).

## DISCUSSION

### I.  Applicable Legal Standards

#### A.  Summary Judgment

Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."). However, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." Gallo v. Prudential Residential Serv., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000).

Once the moving-party establishes that there is no issue of material fact precluding judgment as a matter of law, the non-moving party must then shoulder the responsibility of keeping its case alive. Anderson, 477 U.S. at 250. "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56(e)) (internal quotations omitted). However, the non-moving party must take caution "not [to] rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)). The non-moving party "must do more than show there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998); see also

D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

Summary judgment is appropriate if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," a pragmatic approach to determining whether there is "no genuine issue for trial." Matsushita, 475 U.S. at 587 (internal quotes omitted) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 298 (1968)). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). For a judicial determination of what facts in a particular case qualify as material and which are merely periphery, the Court in Anderson set out a framework for employing the substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. . . . [M]ateriality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim. . . .

Anderson, 477 U.S. at 248. I will now turn to the substantive law to use as a guidepost in identifying what facts, if any, would be material to the outcome of this lawsuit.

**B.** **Prima Facie Negligence Claim**

Jurisdiction in this case is based on diversity of citizenship; thus because the alleged negligent acts and the accident occurred in New York, New York substantive law governs. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Defendant claims that summary judgment is appropriate because plaintiff has failed to establish a prima facie case of negligence. Generally, New York law requires that a plaintiff in a negligence action establish that: (1) the defendant owed it a cognizable duty of care; (2) the defendant breached such duty; and (3) the plaintiff suffered damages as a proximate result of this breach. Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 499 N.Y.S.2d 392 (1985).

Without question, K Mart Corporation had a duty to maintain the premises in a reasonably safe condition. See, e.g., Basso v. Miller, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976) (New York State Court of Appeals adopts "single standard of reasonable care . . . whereby foreseeability shall be a measure of liability"). Additionally, "a shopkeeper has a duty to keep aisles free from obstacles which may injure persons endeavoring to shop." Lee S. Kreindler et al., New York Practice Series - New York Law of Torts, § 12:44 (July 2005), available at 2002 WL 1802840 (citing Henderson v. Waldbaums, 149 A.D.2d 461, 462, 539 N.Y.S.2d 795, 796 (2d Dept. 1989) ("It is also the duty of a storekeeper to prevent any obstruction to its customers in the aisles of its store.")).

While K Mart clearly had a duty to keep its premises clear of hazards for its customers, in order for plaintiff to establish a prima facie case of negligence in a "slip and fall" action, she must demonstrate that defendant "created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition." Bykofsky v. Waldbaum's Supermkt., Inc., 210

6

A.D.2d 280, 281, 619 N.Y.S.2d 760, 761 (2d Dept. 1994); see also Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 838, 492 N.E.2d 774, 775, 501 N.Y.S.2d 646, 647 (1986).  "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Bykofsky, 210 A.D.2d at 281, 619 N.Y.S.2d at 761 (internal quotations omitted).  Where defendant has created the condition, actual or constructive notice may be imputed.  Lewis v. Metro. Transp. Auth., 99 A.D.2d 246, 249, 472 N.Y.S.2d 368, 371 (1st Dept. 1984).  However, if there are facts indicating that defendant created the condition, it is irrelevant for establishing liability whether the defendant had actual or constructive notice of the condition.  See, e.g., Roberts v. Arrow Boat Club, Inc., 46 A.D.2d 815, 816, 361 N.Y.S.2d 213 (2d Dept. 1974).

        In the present case, plaintiff does not allege that defendant had actual or constructive notice, rather plaintiff bases her theory of prima facie negligence on the assertion that defendant created the hazard.  As the moving party, the initial burden is on K Mart to "establish in the first instance that it did not create the condition."  Westbrook v. WR Activities-Cabreras Mkts., 5 A.D.3d 69, 75, 773 N.Y.S.2d 38, 44 (1st Dept. 2004). However, "[i]n order to impose liability on defendant, there must be some proof tending to show that [defendant] . . . created the dangerous condition causing injuries to a customer."  Eddy v. Tops Friendly Markets, 91 A.D.2d 1203, 459 N.Y.S.2d 196, 197 (4th Dept. 1983) (emphasis added); see also Eagan v Great Atl. & Pac. Tea Co., 252 A.D. 791, 300 N.Y.S. 707 (2d Dept. 1937).

        New York courts have been careful to draw a line between affirmative acts that create a hazard and non-affirmative acts.  For a plaintiff to prove prima facie negligence, even if she can credibly infer creation by defendant, she must show the creation was an affirmative, "deliberate and

intentional" act by defendant.  <u>Cook v. Rezende</u>, 32 N.Y.2d 596, 599, 300 N.E.2d 428, 429, 347 N.Y.S.2d 57, 59 (1973).  <u>See also</u> <u>Fink v. Bd. of Educ. of the City of New York</u>, 117 A.D.2d 704, 705, 498 N.Y.S.2d 441 (2d Dept. 1986) (dismissal of complaint affirmed because plaintiffs failed to present probative evidence that defendant created the hazard by affirmatively knocking a small box of supplies to the floor rather than it falling on its own); <u>Ortiz v. Pathmark Stores</u>, No. 03-Civ-0040, 2004 WL 2361674, at *3 (S.D.N.Y. Oct. 20, 2004) (summary judgment denied because boxes of frozen food, the melting of the contents inside causing the puddle of water on which plaintiff slipped, were unlikely to have been placed in their location absent an affirmative act by defendants).

Coupled with the distinctions drawn between affirmative and non-affirmative acts is the second inquiry, which New York courts conduct in slip-and-fall cases, as to whether the affirmative act was likely committed by an employee/agent of the defendant or whether the act is more likely attributable to a customer or some other source.  If the moving party is able to show that there is no evidence that it created the hazard, but rather, that in all probability it was created by some other source, then summary judgment may be granted in its favor.  <u>See</u> <u>Quarles v. Columbia Sussex Corp.</u>, 997 F. Supp. 327, 330 (E.D.N.Y. 1998) (the mere fact that defendant set up a coffee cart for its guests in the lobby does not amount to creation of the puddle, since any hotel guest could have spilled coffee).  <u>See also</u> <u>Adams v. Alexander's Dep't Stores of Brooklyn, Inc.</u>, 226 A.D.2d 130, 131,  639 N.Y.S.2d 826, 828 (1st Dept. 1996) (complaint dismissed because "the record demonstrates only that plaintiff fell on ice cream [on defendant's property], not how or when that substance came to be on the floor"); <u>Melton v. E.P.S. Hair Design, Inc.</u>, 202 A.D.2d 649, 610 N.Y.S.2d 53 (2d Dept. 1994) (defendant was responsible for the chair but there was no evidence that defendant created the dangerous condition by turning the chair so that the footrest faced the aisle).

Finally, in New York circumstantial evidence is sufficient to make out a prima facie case of negligence if it supports an inference of causation or negligence, even it if does not rule out "the existence of remote possibilities that the injury was not caused by the defendant, or [that] the defendant was not negligent." Dillon v. Rockaway Beach Hosp. & Dispensary, 284 N.Y. 176, 179, 30 N.E.2d 373, 374 (1940). "It has long been recognized that, in circumstantial cases, the possibility that an accident may have been caused by factors other than defendant's negligence does not mandate a conclusion that plaintiff has failed to make out a prima facie case." Brito v. Manhattan and Bronx Surface Transit Operating Auth., 188 A.D.2d 253, 254, 590 N.Y.S.2d 450, 451 (1st Dept. 1992). However, speculation absent any evidence, direct or circumstantial, will not defeat a motion for summary judgment. See Moorman v. Huntington Hosp., 262 A.D.2d 290, 691 N.Y.S.2d 548 (2d Dept. 1999) (summary judgment affirmed because "plaintiff's assertions that only employees had access to the utility room and therefore only an employee of the defendant could have created the hazardous condition [was] speculative and unsupported by any evidence in the record") (emphasis added); Gatanas v. Picnic Garden B.B.Q. Bufffet House, 305 A.D.2d 457, 761 N.Y.S.2d 77 (2d Dept. 2003) (summary judgment granted because plaintiff's assertion that water on the floor was spilled by a waitress refilling customer's glasses was "mere speculation"). While there may be a fine line between circumstantial evidence pointing towards a probable source of creation and bald speculation,

> [w]here the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury.

Bernstein v. City of New York, 69 N.Y.2d 1020,1021, 511 N.E.2d 52, 53, 517 N.Y.S.2d 908, 909

(internal quotations omitted), (quoting <u>Ingersoll v. Liberty Bank</u>, 278 N.Y. 1, 7, 14 N.E.2d 828, 829 (1938)).

## II.    <u>Application of Law to Facts</u>

### A.    **Threshold Matter**

As an initial matter, plaintiff's Memorandum of Law in Opposition to Defendant K Mart Corporation's Motion for Summary Judgment ("Pl.'s Mem.") predicates defendant's liability on the assertion that the evidence "indicates that [the case of cans] was most likely left on the floor by defendant's stock associate at least one hour before the accident, and that it was a tripping hazard" (Pl.'s Mem. at 1). Consequently, whether or not defendant K Mart had actual or constructive notice of the condition that caused plaintiff Olsen's fall is "not relevant" (<u>Id</u>. at 4). In sum, plaintiff's theory of the case is that the Olsen, Ravaioli, and Davidson deposition testimony establishes through circumstantial evidence that the flat of cans, over which plaintiff fell, was left on the pantry-aisle floor by John Gouda, a K Mart employee, while he was stocking the shelves the morning of plaintiff's injury.[1] Accordingly, this Court will only consider whether there is a genuine issue of material fact as to whether K Mart created the condition that caused plaintiff Olsen's fall. Additionally, the Court will consider whether the hazard was open and obvious and what effect, if any, it would have on summary judgement.

### B.    **Creation of the Condition**

---

[1] To date, John Gouda has not been deposed in this matter by either party, and, according to defendant is no longer employed by K Mart.

Defendant argues that since wrapped flats of pantry items are periodically left on shelves for convenient restocking or customer-bulk purchase, plaintiff cannot prove that the case was left on the floor by a stocking clerk and not by a customer, and, thus, plaintiff has failed to set forth a prima facie case of negligence. Simply, defendant maintains that permitting the instant action to proceed to trial would require a jury to engage in speculation as to whether the wrapped box of cans was left out by an employee or moved from a shelf to the floor by a customer. In support of its arguments, defendant relies principally on the Ravaioli deposition testimony that flats of goods were periodically left on the shelves for easier restocking (Ravaioli Dep. 51:10-12).

Plaintiff disputes defendant's explanation of the box being placed on the floor by a customer, pointing to (i) the assistant pantry-aisle manager Davidson's statement that John Gouda stocked the pantry-aisle shelves on the morning of the accident, (ii) Ravaioli's statements that the other cases of goods on the shelves were not in their plastic wrap, and (iii) Ravaioli and Davidson's testimony that goods not unpacked and placed on the shelves were subsequently brought back to storage. Also, plaintiff points to the sixteen pound weight of the flat of cans to dispute that a customer would move it onto the floor.

K Mart relies on a host of case law to support its contention that plaintiff's assertions are mere speculation and that, consequently, the evidence is insufficient to defeat a motion for summary judgment. However, this Court will discuss, in turn, defendant's authorities and why they fail to adequately satisfy defendant's high burden in this case, thereby leaving open a question of material fact for the jury as to whether defendant created the hazard from which plaintiff's injuries derived.

In Quarles v. Columbia Sussex Corp., the Radisson Hotel placed coffee in the hotel lobby for its guests. 997 F. Supp. at 329. Plaintiff, a guest in the hotel, slipped in a puddle of coffee on

the lobby's marble floor.  Id.  The court held that there was no evidence that defendant created the

spill, because "the mere fact that a coffee cart was set up for guests does not amount to creation [of

the condition]."  Id. at 330.  Plaintiff testified that in the hotel lobby she observed people "[h]olding

coffee cups during the time in question and recalls seeing a coffee cart in the vicinity."  Id. at 329.

That very fact is the key distinction between Quarles and the present case.  The coffee spill was

equally, if not more so, "reasonabl[y] and probabl[y]" created by one of the many hotel lobby

occupants who had partaken of coffee that morning, than from the coffee urn set up by defendants.

See Bernstein, 69 N.Y.2d at 1021, 511 N.E.2d at 53, 517 N.Y.S.2d at 909.

    In the instant case, defendant's claim that a customer was the likely cause of the box on the

floor, without definitively proving that its employee did not leave the case after stocking the pantry-

aisle, is no more probable than plaintiff's assertion that the box was indeed left by the pantry-aisle

stocking associate.  Defendant makes much of the fact that the box was "a pretty long way" from

the actual spot on the shelves where Spaghetti-O's were displayed (Davidson Dep. 22:12-13);

however, based on the rest of the deposition testimony, the "remote possibilities that the injury was

not caused by the defendant" pale in light of the circumstantial evidence from which a jury could

infer that it was.  See Dillon, 284 N.Y. at 179, 30 N.E.2d at 374.  In fact, the very location of the

box, a slight distance from the shelved Spaghetti-O's, could lead a reasonable jury to infer that the

box was overlooked by the stock-associate when he completed his stocking of the pantry-aisle,

rather than that a customer hefted the sixteen pound box down the aisle.  See Konikoff, 234 F.3d at

97.


    John Ravaioli, the loss prevention manager at K Mart at the time of plaintiff's accident,

stated that he patrolled the aisles for hazards on "a.m. and p.m. tours" to address safety concerns in the aisles and hazards throughout the store (Ravaioli Dep. 4:21, 32:8-9,13-15). While Ravaioli stated that he patrolled the aisles "constantly" during stocking, he stated it was "hard to determine" approximately how many times he would have patrolled the pantry aisle the day of plaintiff's accident (Ravaioli Dep. 31:19-21, 24). Ravaioli described the stocking practices at the store as "routine" (Ravaioli Dep. 32:21). The pantry associates, the employees in charge of stocking, would bring the merchandise out on "floor highs" or "roll and racks" (Ravaioli Dep. 32:22-25, 33:21-22). Ravaioli stated that when there was no room for merchandise on the shelf it was brought "back to the back [of the store]" (Ravaioli Dep. 33: 9-11). Typically, goods such as cans were brought out in flats and crates on the floor highs and unloaded onto the shelves (Ravaioli Dep. 37:2-3). The empty cartons were brought to the back and thrown away afterwards (Ravaioli Dep. 37:9-12).

Ravaioli testified that when he inquired of his staff how the case of Spaghetti-O's got onto the floor, "it was unknown. Nobody knew how it got there" (Ravaioli Dep. 38:16-17). Yet, he stated that he did not inquire as to who last stocked the Spaghetti-O's before the accident (Ravioli Dep. 38:18-20).[2] Ravaioli cannot state with any certainty where the flat of Spaghetti-O's cans came from and, according to his deposition testimony, did not follow up with any of the pantry employees to inquire (Ravioli Dep. 41:13-20).

Anthony Davidson, the assistant manager of the pantry department when plaintiff's accident

_____

[2]Additionally, Ravaioli, although provided with a Polaroid camera, did not take any photographs of the scene the day of plaintiff's accident because management did not "tell [him] when to take pictures and when not to take pictures" (Ravioli Dep. 21: 13-25).

occurred, recalled that on October 20, 2003, there was one pantry associate, Mohammed Gouda, assigned to the aisle where plaintiff tripped, and that, generally, the pantry shelves were stocked in the morning if there was merchandise to go out onto the shelves (Davidson Dep. 6:3-4,14-16, 7:21-23, 11:5-11). Any stocking done during the morning hours would usually be completed by noon (Davidson Dep. 11:11-13).

Unequivocally, Davidson recalls viewing the pantry-aisle the morning of plaintiff's accident and remembers that Gouda brought cases out to stock the shelves (Davidson Dep. 28:23-25, 29:2-5). He could not recall exactly what items were brought out from the stockroom that morning, and could not specifically state whether Spaghetti-O's were unpacked (Davidson Dep. 29:5-6,11-13). Davidson stated at his deposition that the case of Spaghetti-O's might have been left on a shelf for customer purchase in its wrapped state (Davidson Dep. 23:11-14,17,19-25). Contrarily, Ravaioli testified that the cases, when used as "floor stacks" or displays to promote sale items, were <u>normally unwrapped</u>, not in plastic, as was the case of Spaghetti-O's in question (Ravioli Dep. 44:7-11,16-18) (emphasis added).

Under <u>Quarles</u>, if the moving party can show there is <u>no</u> evidence that it created the hazard it may be entitled to summary judgment. 997 F. Supp. at 330 (emphasis added). Defendant has failed to do so, as the circumstantial evidence in no way rules out defendant's possible creation of the hazard. Likewise, plaintiff has offered circumstantial evidence to "show[] that [her] version of the events is not wholly fanciful." <u>D'Amico</u>, 132 F.3d at 149. Indeed, plaintiff has provided evidence that the pantry-aisle was stocked the morning of her accident. Additionally, plaintiff has provided "some proof tending to show" that K Mart did create "the dangerous condition causing

injuries" to plaintiff Olsen.  Eddy, 91 A.D.2d at 1203, 459 N.Y.S.2d at 197.

In Fink v. Bd. of Educ. of the City of New York, the court held that without evidence of an affirmative act on the part of defendants, plaintiff could not prove creation of the hazard.  117 A.D.2d at 705, 498 N.Y.S.2d 441.  Plaintiff Fink was in the supply room with approximately ten other teachers.  Id.  When she entered the room, there was nothing on the floor; however, as she exited, she tripped over a small box that had fallen to the floor.  Id.  Plaintiff argued that because the only other people in the room were fellow teachers, one of them must have knocked the box to the floor, creating a tripping hazard.  Id.  The court did not agree, however, holding that plaintiff failed to provide any evidence that the box was "affirmatively" knocked over.  Id.  More light is shed on the facts of Fink in Ortiz v. Pathmark Stores, 2004 WL 2361674, at *3.  The Ortiz court noted, "[the] small, six-inch box in the aisle of the supply room could have fallen to the floor in the absence of any affirmative act."  2004 WL 2361674, at *3.

Ortiz is factually more akin to the present case.  In Ortiz, plaintiff fell as a result of water on the Pathmark store floor.  Id. at *1.  Plaintiff observed boxes in the frozen-food section of the store dripping water and testified that the water dripping from the boxes was the water on which she fell.  Id.  In a second fall at the same location, plaintiff slipped on grapes.  Id.  With regard to the first slip, the court denied defendant's motion for summary judgment, holding that "[a] jury could infer from these facts that Pathmark caused the boxes to be placed and left between refrigerators in the frozen food section and thus created the condition that led to Ortiz's fall."  Id. at *3.  Plaintiff apparently did not argue that defendant had created the hazard with respect to the second slip, but rather that defendant was on constructive notice of the condition, on which ground defendant was granted

summary judgment.

Fink is inapposite to the present case, since a sixteen pound box of cans, unlike a small box of office supplies, could not be jarred by a breeze or some other disturbance and fall unaided to the floor. The placement of the sixteen pound case on the floor was an "affirmative act" committed by someone, the determination of who most appropriately rests with a jury. Like the boxes of frozen foods in Ortiz, the fact that defendant admits that the pantry-aisle was stocked the day of plaintiff's accident creates an inference that the sixteen pound box was left there by a stock-associate, as opposed to moved by a customer. While Ravaioli did clarify that, on occasion, flats of canned goods would be left in their case on the shelves for easy restocking (Ravaioli Dep. 51:10-12), that does not explain why a customer would pick up a sixteen pound case of Spaghetti-O's and set it on the floor when there was an entire shelf stocked with the very same product (Notice of Mot. for Summ. J., Ex. E, photo. L & O). Ravaioli also claims that when he came to plaintiff's aid, he did not put the case of Spaghetti-O's on top of other items, as plaintiff's photographs three days after the accident depict. Rather, he alleged that he must have put it on an empty shelf space because when asked if he possibly could have placed the flat on top of other goods, he claims he "wouldn't do that" (Ravaioli Dep. 52:14).

Presumably, defendant wants the fact-finder to believe that there was actual space on the shelves for the case and that Ravaioli was not required to place it on top of other goods in order to clear the floor, because that might lead to the inference that there was no space on the shelf for the case and that the case had been left inadvertently on the floor by someone stocking the shelves. Significantly, plaintiff's photographs depict shelves fully stocked with Spaghetti-O's cans, which also might lead a jury to infer that the shelves had been recently, if not within the past few days,

stocked (See Notice of Mot. for Summ. J., Ex. E, photo. L, N, O & P). Remarkably, defendant would ask this Court to believe that not only once in a single week did a customer lift a sixteen pound case of Spaghetti-O's, first onto the floor, but that it happened twice, from an empty shelf to atop pantry products, in the space of three days.

Defendant cites Cooper v. Pathmark, 998 F. Supp. 218 (E.D.N.Y. 1998) in further support of its contention that the box was moved by a customer and therefore summary judgment should be granted. However, the facts in Cooper are easily distinguished from the facts in this case, and thus once again affirm the need for a jury determination on this question of material fact. In Cooper, plaintiff slipped in the household and laundry supplies aisle on a puddle of soapy liquid. Id. at 219. On a nearby shelf, a bottle of soap was lying on its side, the cap a few shelves below. Id. The bottle was not damaged or cracked in any way. Id. Plaintiff alleged that, because there were carts of empty boxes indicating that the shelves had been recently stocked, the soap must have been tampered with by employees. Id. at 220. The court found this to be speculative, and held that

> [t]he factual setting surrounding the incident is inconsistent with an employee created condition. A bottle lying overturned on the floor with the cap removed and placed on the shelf, is not indicative of an employee accident resulting from the improper stocking of shelves, but is suggestive of foul play by a non-employee.

Id. at 221. Plaintiff Olsen argues that "the placement of the case of plastic wrapped Spagetti-O's is consistent with an accident caused by an employee improperly stocking the shelves" (Pl.'s Mem. at 3). This Court agrees with plaintiff that Cooper is distinguishable. A bottle of soap lying on its side, the cap some shelves down, leaking liquid all over the floor could have many imaginable sources other than employees and to pinpoint who caused the hazard would call for wild speculation. Yet, for a jury to infer that a sixteen pound box of cans, still in its plastic wrapping, unlike all the

other boxes on the shelves for customer purchase and restocking, had been overlooked by a stock clerk the morning of the incident is not so wild a speculation.

This is especially true in light of the fact that defendant carries the burden in summary judgment to prove that it did not create the hazard.  See Westbrook, 5 A.D.3d at 75, 773 N.Y.S.2d at 44.  Davidson admittedly did not assess the aisle again the morning or afternoon after Gouda stocked the shelves (Davidson Dep. 29:7-10).  Ravaioli found it "hard to determine" approximately how many times he had patrolled the pantry aisle the day of plaintiff's accident (Ravaioli Dep. 31:19-21, 24).  Thus, defendant cannot rule out the box having been left behind after the shelves were stocked that morning.[3]  And despite his management position over the pantry-aisle, Davidson never spoke with Gouda regarding the accident, that day or subsequently (Davidson Dep. 25:16-18).  Such a conversation could have quickly addressed, while all the employees' memories were fresh, what goods were stocked the day of the accident and whether the box of cans had a place on one of the shelves or was originally destined for return to the storeroom and forgotten, as plaintiff alleges.  Given the flat's weight, it is far more speculative to envision customers hauling the case up and down the aisle and exerting the effort to bend down and place it on the floor rather than to shove it carelessly onto an arm's-reach-level shelf, on top other goods, as plaintiff Olsen recalls Ravaioli doing.

### C.    Circumstantial Evidence

---

[3] The time-line for the day of the accident is also instructive.  Notably, any stocking Gouda did that morning would have been completed by noon (Davidson Dep. 11:11-13).  Neither Davidson or Ravaioli have testified to patrolling the aisles between noon and 1:15, the approximate time of plaintiff's accident (Olsen Dep. 15:22-25; 16:2-3; Aff. of Marie A. Olsen ¶ 1; Davidson Dep. 29:7-10; Ravaioli Dep. 31:19-21, 24).  In light of the fact that plaintiff's fall occurred so shortly after Gouda finished stocking the pantry-aisle, it is more likely than not that the box was left behind by Gouda, not moved by a customer as defendant asserts.

In its Memorandum of Law in Support of Defendant K Mart Corporation's Motion for Summary Judgment ("Defs.' Mem."), defendant argues that plaintiff cannot produce any evidence that it created the hazard causing her to fall (Defs.' Mem. at 11). Consequently, defendant argues that plaintiff's theory is mere "speculation" and "insufficient," and thus mandates summary judgment (Defs.' Mem. at 15).

However, circumstantial evidence can defeat a summary judgment motion if the defendant fails in its burden of proving there are no issues of material fact. See Brito v. Manhattan and Bronx Surface Transit Operating Auth., 188 A.D.2d 253, 590 N.Y.S.2d 450 (1st Dept. 1992). In Brito, Joao Brito ("Brito") was found lying in a crosswalk immediately after defendant's bus made a right turn into the crosswalk. Id. Brito sustained serious injuries and was incapable of testifying at trial. Id. Because there were no witnesses to the event which caused Brito's injuries, plaintiffs had to prove their case through circumstantial evidence. Id. Plaintiffs provided, among other things, testimony from a tractor-trailer driver who observed defendant's bus traveling at approximately ten to fifteen miles per hour make the right turn into the crosswalk. Brito, 188 A.D.2d at 254, 590 N.Y.S.2d at 451. The driver also testified that he noticed a pedestrian lying in the crosswalk immediately after the bus passed. Id. Additionally, a bag of crushed groceries was found next to Brito, and "produce from the bag was smeared in the direction traveled by the bus whose right rear tires bore traces of the same food particles." Id.

The Brito court found that plaintiffs established a prima facie case of negligence based upon circumstantial evidence. Id. In reaching this conclusion, the court took into account the following evidence: the observation of Brito's body in the crosswalk immediately after defendant's bus had completed its turn; the link between the crushed produce and the bus; medical opinions providing

that the fractures to Brito's foot were "crush injuries," that could not have been caused by a regular fall; and the proximity and timing of the bus's movement. Id. at 254-55. Plaintiffs defeated defendant's summary judgment motion through circumstantial evidence, by sufficiently linking defendant's bus to Brito's accident.

Here, like the plaintiffs in Brito, plaintiff Olsen has provided circumstantial evidence that could lead a reasonable juror to infer that defendant created the hazard causing her injury. Specifically, defendant has not been able to rule out the possibility that the box could have been left there by John Gouda, as neither the pantry-aisle manager Davidson, nor the loss prevention manager Ravaioli saw fit to question Gouda in the aftermath of the accident. Still, Davidson recalls that Gouda did stock the aisles that morning, and Ravaioli did not patrol the aisle between Gouda's completion of stocking sometime before noon and plaintiff's fall after 1 pm. Additionally, the weight of the box, sixteen pounds, makes it unlikely that a customer would move it onto the floor, and equally less likely that a customer would have again moved it on top of the noodles boxes as Ravaioli testified. The fact that the flat of Spaghetti-O's was still in its plastic wrapping is also circumstantial evidence that it was not meant for the shelves, since all other bulk items on the shelves were without their plastic sheath.

Thus, it appears unlikely that the hazard was created by a K Mart customer and quite possible that a reasonable jury could infer that the hazard was created by a K Mart employee. See Schneider v. Kings Highway Hosp. Center, Inc., 67 N.Y.2d 743, 490 N.E.2d 1221, 500 N.Y.S.2d 95 (1986) (providing that while "[t]he law does not require that plaintiff's proof positively exclude every possible cause" of an accident but defendant's negligence, plaintiff must render "other causes sufficiently remote or technical to enable the jury to reach its verdict based not upon speculation,

but upon the logical inferences to be drawn from the evidence" (citations omitted)). Plaintiff is not required to "positively exclude every other possible cause of the accident." <u>Gayle v. City of New York</u>, 92 N.Y.2d 936, 937, 703 N.E.2d 758, 759, 680 N.Y.S.2d 900, 901 (1998) ("A plaintiff need only prove that it was more likely or more reasonable that the alleged injury was caused by the defendant's negligence than by some other agency." (internal quotations omitted)). Thus, the fact that plaintiff has no direct evidence to prove that defendant created the hazard does not require summary judgment be granted.

Accordingly, the fact that plaintiff's claim, that defendant created the hazard over which she fell, is based almost exclusively on circumstantial evidence does not require summary judgment for the defendants. The circumstantial evidence here is enough to satisfy this Court that a jury could reasonably infer that defendant created the hazard in the pantry-aisle.

### D.    Open and Obvious Condition

Defendant argues that the case of Spaghetti-O's was readily observable and not inherently dangerous and that, consequently, the complaint should be dismissed (Defs.' Mem. at 23). Plaintiff counters by arguing that whether the condition was open and obvious does not obviate defendant's lack of due care and only goes to the issue of plaintiff's comparative fault (Pl.'s Mem. at 5). For the following reasons, defendant's motion for summary judgment is also denied on this issue, because whether the hazard was open and obvious is a question of material fact for the jury.

In <u>Westbrook v. WR Activities-Cabreras Markets</u>, the plaintiff tripped over an unopened box measuring 2 ½ feet long by 1 ½ feet wide by 10-12 inches high, which was left in the middle of the aisle in a Met Foods supermarket. 5 A.D.3d at 70, 773 N.Y.S.2d at 40. There, as here, the defendants moved for summary judgment, arguing that the box over which plaintiff fell did not

"constitute a dangerous condition as a matter of law and did not give rise to a duty to warn as it was open, obvious and readily observable." Id. The court denied summary judgment and held that "[e]ven if a hazard qualifies as 'open and obvious' as a matter of law, that characteristic merely eliminates the property owner's duty to warn of the hazard, but does not eliminate the broader duty to maintain the premises in a reasonably safe condition." Id.; see also Cupo v. Karfunkel, 1 A.D.3d 48, 52, 767 N.Y.S.2d 40, 43 (2d Dept. 2003) (holding that open and obvious nature of dangerous condition did not preclude finding of liability against owners).[4]

Furthermore, the court in Westbrook held that "[while] the mere fact that a defect or hazard is capable of being discerned by a careful observer . . . the nature or location of some hazards, while they are technically visible, make them likely to be overlooked." Westbrook, 5 A.D.3d at 72, 773 N.Y.S.2d at 41. The court found that "[a] lone 10- to 12- inch-high box in a supermarket aisle is, by definition, easily overlooked, creating a hazard which can, and ought to, be removed." Westbrook, 5 A.D.3d at 75, 773 N.Y.S.2d at 44. The facts in the present case closely mirror the facts in Westbrook, and a jury could find that the box of Spaghetti-O's partially tucked under the bottom shelf, protruding into the aisle could be "easily overlooked." Thus, in Westbrook, the court held that the question of whether the box was open and obvious was one for the jury, and in the case at hand, it provides yet another question of material fact. See Westbrook, 5 A.D.3d at 72, 773

---

[4]It should be noted that in Cupo the court held that the issue of comparative negligence coupled with open and obviousness only arose where a dangerous condition existed on the property that the landowner was under a duty to remedy. The court did not mean to suggest that a court "is precluded from granting summary judgment to a landowner on the ground that the condition complained of by the plaintiff was both open and obvious and, as a matter of law, was not inherently dangerous." 1 A.D.3d 48, 52, 767 N.Y.S.2d 40, 43. The court used the example of tripping over a concrete parking divider. While Cupo does not preclude summary judgment, it certainly does not demand it, and thus this Court will leave this matter of comparative liability to the jury.

N.Y.S.2d at 41 ("The question of whether a condition is open and obvious is generally a jury question . . . "). <u>See also</u> <u>Femenella v. Pellegrini Vineyards, LLC</u>, 16 A.D.3d 546, 792 N.Y.S.2d 122 (2d Dept. 2005) (holding that there was a genuine issue of material fact as to whether the alleged unsafe condition created by the positioning of plaintiff's chair too close to the edge of raised outdoor patio was open and obvious, and as to plaintiff's comparative negligence); <u>Nezami v. Price Costco Inc.</u>, 5 Misc.3d 1, 3, 783 N.Y.S.2d 200, 201 (N.Y. Sup. App. Term, 2004) (holding "action should not have been dismissed on the ground that the condition was open and obvious. Proof that a dangerous condition is open and obvious no longer precludes a finding of liability against a landowner, it is merely relevant to the issue of plaintiff's comparative negligence.").

# **CONCLUSION**

In its motion for summary judgment, defendant had the burden of establishing in the first instance that it did not create the condition causing plaintiff's injuries, or otherwise have notice of it. See Guiffrida v. Metro North Commuter R. Co., 279 A.D.2d 403, 720 N.Y.S.2d 41 (1st Dept. 2001). Here, defendant failed to satisfy that burden, as a reasonable jury could infer that defendant's pantry-aisle employee John Gouda left the box of wrapped Spaghetti-O's in the aisle after stocking the shelves the morning of plaintiff's accident. Viewing the evidence in the light most favorable to plaintiff, there are two material questions of fact for the jury to determine: (1) whether the box was left by Gouda or moved by a customer; and (2) whether the placement of the box on the aisle floor was open and obvious, and readily discernible, since plaintiff's description of the accident supports a possible finding that the box, partially tucked under the bottom shelf was not noticeable to a customer reaching upwards to retrieve products off high shelves.

The deposition testimony of defendant's agents, Ravaioli and Davidson, do not convince this Court that defendant absolutely did not create the hazzard. Whether their testimonies are credible is for the jury to determine, as is the question of how the case of Spaghetti-O's migrated from its place either on the shelves or in storage to its fateful resting-place on the pantry-aisle floor the afternoon of plaintiff's accident. Additionally, once the jury determines the facts, if it were to find that defendant created the hazard, the question of whether the hazard was "open and obvious" would be one for them to decide as well.

A plaintiff opposing such a motion for summary judgment, must come forward with evidence of sufficient facts from which defendant's negligence and causation could be inferred. See Salkey v. New York Racing Ass'n, 243 A.D.2d 621, 665 N.Y.S.2d 521 (2d Dept. 1997). Plaintiff has

satisfied this burden.  For the above reasons, I find that there are triable issues of fact as to whether defendant created the situation from which plaintiff's accident resulted and whether the case of wrapped Spaghetti-O's cans was "open and obvious."  Defendants' motion for summary judgment is therefore denied.

**SO ORDERED.**

Dated: Brooklyn, New York
          November 8, 2005

                                        ___/s/_____
                                        JOAN M. AZRACK
                                        UNITED STATES MAGISTRATE JUDGE